OPINION
{¶ 1} Defendant-Appellant Ron Dunson appeals from his conviction and sentence for Possession of Crack Cocaine. On appeal Dunson insists that the trial court should have suppressed the cocaine seized from him. However, we conclude that the cocaine was properly seized in the course of a proper frisk for weapons during an investigatory stop.
 {¶ 2} Dunson also contends that the trial court erred in stating that he would be ordered to serve a maximum sentence if he violated the terms of his community control sanction, because the court failed to make the requisite statutory findings. Although the trial court did not make those findings at sentencing, those findings can still be made if a prison term is ever imposed. For that reason, we conclude that this issue is raised prematurely.
 {¶ 3} Because we find no merit to either assignment of error, the judgment of the trial court is Affirmed.
 I {¶ 4} Late one May evening in 2004, three Dayton police detectives were on routine patrol in an unmarked vehicle, conducting surveillance in the area of the Mount Crest housing complex, a known high drug area. The detectives saw three men huddled around the open trunk of a car that was backed into a parking space. As the detectives drove past, Detective Hall saw one man, later identified as Dunson, reach into the wheel well of the trunk. Dunson appeared to either be retrieving or concealing something. The detectives knew that drugs are often hidden in wheel wells, so they turned around to drive by again. When they drove by a second time, Dunson whistled at the officers, an action commonly used by drug dealers signaling to potential buyers. The detectives also noticed another man standing by a nearby car, with a woman sitting in the passenger seat.
 {¶ 5} The detectives got out of their car, with their badges visible, and announced who they were. One of the three men by the trunk ran away. The man standing by the nearby car quickly got into the car, announcing, "I'm out of here." The two other men, Dunson and Forbus, began walking toward the front door of the housing complex. Due to the behavior of all four men, the detectives became concerned for their safety, thinking that the men might have weapons.
 {¶ 6} Detectives House and Hall approached Dunson and Forbus. Detective House began patting down Forbus, who verbally objected to the pat-down and tried to swat Detective House's hand away. Because drugs and guns are often found together, the detectives became increasingly concerned for their safety. Therefore, Detective House put Forbus on the ground and handcuffed him before finishing his pat-down.
 {¶ 7} When Detective House was finished with Forbus, Detective Hall asked Dunson, who had sat down in a lawn chair, to get up so that Detective Hall could pat him down. When Dunson stood up, he immediately reached toward his waistband with his right hand. Detective Hall grabbed Dunson's right hand, Detective House grabbed his left, and the detectives handcuffed Dunson. Despite the fact that it was a warm spring night, Dunson was wearing a heavy leather jacket. He also wore shorts with the waistband down around his mid-thighs and underwear pulled up to his waist. Detective Hall patted Dunson down and felt a hard, rock-like substance, about the size of a gumball, in the front waistband of Dunson's underwear. Detective Hall immediately recognized that he was feeling crack cocaine. He placed Dunson under arrest and conducted a full pat-down search, but found no other contraband or weapons. In the area of the trunk in which Dunson was seen reaching, the detectives found two knotted baggies with torn off ends.
 {¶ 8} Dunson was indicted on one count of Possession of Crack Cocaine. He filed a motion to suppress, which the trial court overruled following a hearing. Dunson pled no contest to the indicted charge and was sentenced to five years of community control. From his conviction and sentence, Dunson appeals.
 II {¶ 9} Dunson's First Assignment of Error is as follows:
 {¶ 10} "THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION TO SUPPRESS."
 {¶ 11} In his First Assignment of Error, Dunson argues that the trial court erred in refusing to suppress the cocaine found in his waistband. In support, Dunson insists that he was arrested when the officers first approached him and identified themselves. Moreover, Dunson claims that the pat-down was beyond the scope of a Terry stop. However, a review of all of the facts reveals that the detectives had reasonable, articulable suspicion of criminal activity, justifying an investigative stop, and due to the behavior of Dunson and his friends, the detectives reasonably believed that the men could be armed. Accordingly, suppression was not warranted.
 {¶ 12} When deciding a motion to suppress evidence, an appellate court is bound to accept the trial court's factual findings if they are supported by competent and credible evidence, and the appellate court must then independently determine, as a matter of law, if the minimum constitutional standard has been met. State v. Williams (1993),86 Ohio App.3d 37, 41, 619 N.E.2d 1141. A police officer is not required to witness a person committing a crime in order to make an investigative stop. Illinois v. Wardlow (2000), 529 U.S. 119,123-34, 120 S.Ct. 673. An officer may briefly detain an individual in order to investigate criminal activity when the officer has specific, articulable facts that, together with rational inferences from those facts, reasonably warrant the intrusion. Id.; Terry v. Ohio (1968), 392 U.S. 1,88 S.Ct. 1868.
 {¶ 13} When determining whether reasonable suspicion of criminal activity exists to warrant an investigative stop, the totality of all of the facts and circumstances must be considered as viewed through the eyes of the reasonable and prudent police officer on the scene, who must be able to react to events as they unfold. State v. Bobo (1988), 37 Ohio St.3d 177,524 N.E.2d 489; State v. Andrews (1991), 57 Ohio St.3d 86,565 N.E.2d 1271. Moreover, as the reviewing court, we must give due weight to the training and experience of the officers and view the evidence as it would be understood by those in law enforcement.Andrews, supra; State v. Smith (1989), 45 Ohio St.3d 255,261-62, 544 N.E.2d 239.
 {¶ 14} All of the circumstances in this case pointed to the likelihood of a drug sale taking place. The detectives were patrolling an area that was known for a high amount of illegal drugs. In fact, Detective Hall alone had made twenty-five to fifty drug arrests in the Mount Crest area over the past few years. Dunson appeared to be concealing or retrieving something from the wheel well, a place where drugs are often hidden. He whistled to the officers as they drove by, an indication that he wanted to make a sale. These facts gave rise to the detectives' reasonable suspicion that Dunson was buying or selling drugs, warranting an investigative stop.
 {¶ 15} During an investigative stop an officer may conduct a limited pat-down of a suspect's outer clothing if the officer reasonably believes that the suspect might be armed. Chimel v.California (1969), 395 U.S. 752, 763, 89 S.Ct. 2034. The test is whether a reasonably prudent person under the circumstances would be warranted in the belief that his safety or the safety of others is in danger. Id. The frisk must be limited to an intrusion reasonably likely to discover guns, knives or other hidden weapons. Id.
 {¶ 16} In this case Detective Hall was concerned for his safety and that of his fellow officers, based on the behavior of the men being observed. One ran away when the police approached, while another immediately got into his car and drove away. The remaining two walked away from the detectives, toward a building and then were uncooperative when the detectives began their pat-down. With the knowledge that drugs and guns are often found together, and the behavior of the four men, the detectives reasonably believed that the men could be armed. As a result, the pat-down was reasonable.
 {¶ 17} Furthermore, the fact that the officers handcuffed Dunson before frisking him did not convert the investigative stop into an arrest. State v. Payne (May 4, 1994), Montgomery App. No. 13898. The question is whether, under the circumstances, the officer's use of force was reasonably necessary to ensure his safety and whether the use of force was limited in scope and duration. State v. White, Montgomery App. No. 18731, 2002-Ohio-262; State v. Gaston (1996), 110 Ohio App.3d 835,842-43. Because Dunson was reaching for his waistband, the detectives feared that he was reaching for a weapon. Thus, the officers were entitled to handcuff Dunson for the investigative stop.
 {¶ 18} For all of the foregoing reasons, the trial court did not err in denying Dunson's motion to suppress. Accordingly, his First Assignment of Error is overruled.
 III {¶ 19} Dunson's Second Assignment of Error is as follows:
 {¶ 20} "THE TRIAL COURT ERRED WHEN IT SENTENCED APPELLANT TO AN EXCESSIVE TERM USING AN UNSUBSTANTIATED FACTOR."
 {¶ 21} When Dunson was sentenced to five years community control, the trial court warned him that he could face a maximum sentence if he violated the terms of his community control. Dunson maintains that the trial court erred in stating that it would impose a maximum sentence should his community control be revoked, because the trial court failed to make the requisite findings to support a maximum sentence. However, because the trial court can make those findings in the future, should the court actually impose a prison term upon Dunson, we conclude his sentence was not ordered in error, and that Dunson's challenge is premature.
 {¶ 22} Citing State v. Kreglow, Champaign App. No. 2004-CA-26, 2005-Ohio-5529, Dunson argues that he must challenge his potential maximum prison term now. However, he misreadsKreglow, supra. In that case, unlike this one, Kreglow had already violated the terms of her community control and had a prison term imposed upon her. Moreover, we affirmed the imposition of Kreglow's sentence because the trial court did make the statutorily required findings at the time of sentencing. Although we noted, gratuitously, that Kreglow had not contested the trial court's statement to her, when her community control sanction was originally imposed, that she faced a maximum sentence upon violation of the terms of her community control sanction, that formed no part of our holding in that case, which analyzed whether the statutory findings were made when the maximum sentence was later imposed. Contrary to Dunson's contention, Kreglow, supra, does not require that the findings be made at the time of the original sentencing.
 {¶ 23} Instead, we find State v. Osborne, Lake App. No. 2004-L-068, 2005-Ohio-4895, applicable to the case presently before us. In that case Osborne was sentenced to community control and warned of his potential 18-month sentence should he violate the conditions of his community control. Osborne appealed, arguing that because the trial court did not order a minimum prison term for him as a first-time offender, the court was required to make the statutory findings pursuant to R.C. §2929.14(A).
 {¶ 24} The Osborne Court noted that "[w]hen a trial court sentences an offender to community control sanctions, the court is statutorily required, `at the time of sentencing, [to] notify the offender of the specific prison term that may be imposed for a violation of the conditions of the sanction.'" Osborne,
supra, at ¶ 9, quoting State v. Brooks (2004),103 Ohio St.3d 134, 814 N.E.2d 837, paragraph two of the syllabus, in turn citing R.C. §§ 2929.19(B)(5) and 2929.15(B). The court's reference to a potential sentence was not the imposition of a prison sentence, but notification of a possible sentence, as required by R.C. § 2929.15(B)(5). "There is no requirement that a sentencing court comply with R.C. § 2929.14(B) or (C) in order to notify an offender of a potential sentence." Osborne, supra, at ¶ 9.
 {¶ 25} Community control is the punishment for the original offense, while imposition of a prison term is punishment for a violation of the terms of the community control. State v.Cossin, Athens App. No. 02CA32, 2003-Ohio-4246. Thus, an offender is sentenced anew, following each violation of his community control sanctions, and the trial court may comply with applicable sentencing statutes at subsequent hearings. Osborne,
supra, at ¶ 10, citing State v. Fraley (2005),105 Ohio St.3d 13, 821 N.E.2d 995, at ¶ 17.
 {¶ 26} While it is true that when imposing a maximum prison term, R.C. § 2929.14(C) requires the trial court to make certain findings, a maximum term of imprisonment has not yet been imposed in this case; Dunson was given community control sanctions. When and if the trial court actually imposes a maximum sentence, the court will have to make the statutorily required findings. Because a maximum prison term has not yet been imposed, Dunson's challenge of that possible sentence is premature. Therefore, his Second Assignment of Error is overruled.
 IV {¶ 27} Both of Dunson's assignments of error having been overruled, the judgment of the trial court is Affirmed.
Grady, P.J., and Brogan, J., concur.