OPINION
{¶ 1} Bradley Lucas, born June 5, 1987, was charged with rape in the Champaign County Juvenile Court. Pursuant to an amenability hearing on May 5, 2005, the juvenile court relinquished jurisdiction to the common pleas court for prosecution. Lucas was indicted on one charge of rape and eventually pleaded guilty to the lesser charge of sexual battery. Lucas was sentenced to three years community control and told that revocation of community control would result in four years of imprisonment.
 {¶ 2} Lucas advances four assignments of error and issues for review.
 {¶ 3} "1. THE JUVENILE COURT ERRED WHEN IT FAILED TO RECORD THE AMENABILITY HEARING.
 "ISSUE PRESENTED FOR REVIEW: {¶ 4} "SHOULD AN APPELLANT BE REQUIRED TO DEMONSTRATE PREJUDICE, IN THE CONTEXT OF JUV. 37(A) AND THE SIXTH AMENDMENT RIGHT [TO] COUNSEL, WHEN A JUVENILE COURT FAILS TO RECORD ANY OF A BINDOVER HEARING AND APPELLATE COUNSEL DID NOT REPRESENT APPELLANT IN THE LOWER COURT?"
 {¶ 5} For reasons unknown, the juvenile court did not record the May 5, 2005, amenability hearing, as required by Juv.R. 37(A). On June 30, 2006, in response to our decision and entry dated May 26, 2006, the juvenile court filed a statement of evidence, which was based on submissions from Lucas — consisting of the recollections of Lucas himself and his trial counsel — and from the State, and on the court's own notes made at the time of the hearing.
 {¶ 6} Lucas claims that this statement of evidence, authorized by App.R. 9(C), is an inadequate vehicle for prosecuting his appeal.
 {¶ 7} Although the failure to record the amenability hearing was undeniably error, we believe the error was harmless in that the statement of the evidence and the rest of the record permits us to adequately address the central question in this appeal: whether the juvenile court abused its discretion in relinquishing jurisdiction and transferring the matter to the court of common pleas.
 {¶ 8} We reject Lucas' contentions that the statement of evidence is inadequate because his trial counsel "had no incentiveto spend a lengthy uncompensated period of time trying to reconstruct the proceeding" or because "the [juvenile] court was not a neutral arbitrator as to what occurred in that court." Lucas has no basis for questioning the professionalism of trial counsel or the juvenile court and, as the State observes, the statement of evidence does set forth evidence favorable to Lucas.
 {¶ 9} Although Lucas observes that the juvenile court conducted "countless hearings" between May 5, 2005, and June 30, 2006, thus affecting the court's ability to recall the particulars of the amenability hearing, that would not be true of Lucas or his trial counsel, and the juvenile court had made and relied upon notes of the hearing.
 {¶ 10} It is true that the statement of evidence does not disclose "evidentiary issues"-if there were any — or "potentially meritorious issues" other than whether the transfer of the case to the common pleas court was an abuse of discretion. However, we do not think there is a likelihood of either. The issue before the juvenile court was straightforward: whether Lucas, within a month of his eighteenth birthday and charged with rape, should be kept in the juvenile system or tried as an adult. Dr. Philip Gibeau, a clinical psychologist, and Alan Swendal, the juvenile court's Chief Probation Officer, were the only witnesses. Dr. Gibeau's ten-page psychological evaluation is part of the record and is consistent with his testimony, as recounted in the statement of evidence. Dr. Gibeau opined that Lucas could be helped in the juvenile system. Mr. Swendal opined, based on Lucas' juvenile record and closeness to age eighteen, that Lucas was not subject to rehabilitation within the juvenile system.
 {¶ 11} In short, we conclude that the trial court's two-page statement of evidence, together with the rest of the record, affords Lucas an opportunity for effective appellate review and we overrule the first assignment of error.
 {¶ 12} "2. THE JUVENILE COURT ERRED WHEN IT RELINQUISHED JURISDICTION OF APPELLANT AND ORDERED THAT HE [BE] BOUND OVER FOR TRIAL AS AN ADULT.
 "ISSUE PRESENTED FOR REVIEW: {¶ 13} "DOES A JUVENILE COURT ABUSE ITS DISCRETION WHEN IT IGNORES THE RECOMMENDATION OF THE COURT APPOINTED PSYCHOLOGIST AND ORDERS THAT A CHILD BE BOUND OVER FOR PURPOSES OF TRIAL AS AN ADULT?"
 {¶ 14} Lucas contends that the juvenile court abused its discretion when it ignored the opinion by Dr. Gibeau that Lucas "could profit by treatment" in the juvenile system. We agree with the State that Dr. Gibeau's opinion was not a ringing endorsement for keeping Lucas in the juvenile system.
 {¶ 15} His summary discussion and opinion in his evaluative report were as follows:
 {¶ 16} "Mr. Lucas is a 17 year old, single, male who was referred by the Champaign County Juvenile Court for an evaluation pursuant to Rule 30(A). Tests of cognitive functioning indicated Low Average intelligence (V IQ of 82 and low levels of academic achievement in the areas of reading and writing reports[)]. His self-reporting of problem behaviors suggests a moderate tendency to show aggressive behavior in the future. Personality testing reflected elements of insecurity, emotional instability, feelings of inferiority, immaturity, limited foresight, a reluctance to admit to his problems, depression and poor planning skills.
 {¶ 17} "His clinical history indicates a preoccupation with sexuality since the age of 13, regular use of alcohol and marijuana, numerous contacts with the criminal justice system and a lack of counseling/treatment to change the dynamics of his behavior. He does not have a support system for redirecting his attitude and behavior.
 {¶ 18} "The history and testing confirms adequate physical maturity but low levels of emotional and psychological maturity. His self-centered orientation focuses on pleasure (alcohol, drugs, acting out) rather than being responsible. There is no evidence of any significant mental illness nor has he been involved in any previous psychological treatment. While his court record is primarily that of misdemeanors, he has shown himself to be a danger to the community and to others (breaking and entering, theft, criminal damaging, rape).
 {¶ 19} "Opinion: Due to the lack of any prior psychological intervention, it is my opinion that Mr. Lucas could profit by treatment in the DYS for: (1) anger management; (2) sexual offender behaviors; and, (3) substance abuse issues. He will do best in a structured residential program emphasizing setting responsible goals; structuring his time; anticipating the consequences of his actions; building respect for others; reducing the impact of peer pressure; establishing confidence in his ability to achieve; building empathy for others; and, improving prosocial behaviors."
 {¶ 20} The juvenile court specifically addressed each of the nine factors favoring and each of the eight factors not favoring transfer to the court of common pleas. R.C. 2152.12(D, E). The juvenile court found factors 6-9 favoring transfer applied. Those factors and the court's commentary on them are as follows:
 {¶ 21} "(6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.
 {¶ 22} "(7) The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.
 {¶ 23} "(8) The child is emotionally, physically, or psychologically mature enough for the transfer.
 {¶ 24} "(9) There is not sufficient time to rehabilitate the child within the juvenile system." R.C. 2152.12(D).
 {¶ 25} "Factor (6). Bradley was under community control performing community service when act occurred. He was also subsequently involved in other offenses and was placed on community control which he violated and from which he ran and was gone for over one (1) year;
 {¶ 26} "Factor (7). Bradley's constant appearance before the Court since 2002, his probations, detentions and community service requirements have not stemmed his behavior although until the current charge, his offenses were generally at a low level;
 {¶ 27} "Factor (8). Bradley is physically mature but according to Dr. Gibeau emotionally and psychologically immature; and
 {¶ 28} "Factor (9). Bradley will turn eighteen(18) years of age in June 2005. There seems to be no question that one month is not enough time to rehabilitate Bradley."
 {¶ 29} The juvenile court found factors 1 and 4 not favoring transfer applied, but that the other six did not apply. The factors and the court's commentary on them are as follows:
 {¶ 30} "(1) The victim induced or facilitated the act charged.
 {¶ 31} "(2) The child acted under provocation in allegedly committing the act charged.
 {¶ 32} "(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.
 {¶ 33} "(4) The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.
 {¶ 34} "(5) The child previously has not been adjudicated a delinquent child.
 {¶ 35} "(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.
 {¶ 36} "(7) The child has a mental illness or is a mentally retarded person.
 {¶ 37} "(8) There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety." R.C.2152.12(E).
 {¶ 38} "Factor (1). The victim clearly had something to do with creating the situation out of which the alleged rape occurred;
 {¶ 39} "Factor (2). There is no indication that Bradley was under provocation;
 {¶ 40} "Factor (3). To the contrary, Bradley is alleged to be the principal actor;
 {¶ 41} "Factor (4). The proof did not indicate physical harm;
 {¶ 42} "Factor (5). To the contrary, Bradley has other delinquent adjudications;
 {¶ 43} "Factor (6). Bradley is physically mature but according to Dr. Gibeau, emotionally and psychologically immature;
 {¶ 44} "Factor (7). Bradley has not been found to be mentally ill or mentally retarded;
 {¶ 45} "Factor (8). As indicated above, because Bradley will turn eighteen (18) years of age in June 2005, the consensus is that one month is not enough time to rehabilitate Bradley. However, security in the juvenile system should not be an issue."
 {¶ 46} The juvenile court's transfer order concluded:
 {¶ 47} "FINDING
 {¶ 48} "In this Court's opinion, there are three overriding factors in this case. The first is that Bradley has shown no indication that he wants to change, he is reluctant to admit his problems and he stated he felt treatment would not be helpful to him. A proper attitude is the first step in any rehabilitation or treatment and Bradley doesn't have this. Secondly, if even [sic] he could be treated, he has no support system for care after treatment to reinforce the treatment. Treatment is usually doomed to failure without a followup support system. And lastly, there simply is not enough time to do anything with Bradley before he turns eighteen (18) years of age and becomes an adult in June 2005. Bradley is, from all evidence, a danger to the property in the community.
 {¶ 49} "The Court finds that Bradley is not amenable to rehabilitation in the juvenile system and the safety of the community may require he be subjected to the adult sanctions."
 {¶ 50} Lucas complains that the juvenile court did not address his impairments, but the court was not required to do so. He claims that, contrary to Dr. Gibeau's report, the court "found that any counseling or intervention that [he] received would not be of benefit to him." The juvenile court did not so find, as the passage quoted immediately above demonstrates.
 {¶ 51} The juvenile court's finding has ample support in Dr. Gibeau's psychological evaluation and the testimony of Parole Officer Swindal. No abuse of discretion is demonstrated and the second assignment of error is overruled.
 {¶ 52} "3. THE COMBINED EFFECT OF TWO OF THE TWO ERRORS IDENTIFIED HEREIN DEPRIVED APPELLANT OF DUE PROCESS AND A FAIR TRIAL.
 "ISSUE PRESENTED FOR REVIEW[:] {¶ 53} "SHOULD THIS COURT GRANT RELIEF BASED UPON THE COMBINED EFFECT OF THE PREJUDICE RESULTING FROM THE ERRORS CONTAINED IN ASSIGNMENTS OF ERROR NOS. I AND II?"
 {¶ 54} Based on our determination that this record, despite the lack of an amenability hearing transcript, permits adequate appellate review, we overrule this assignment of error.
 {¶ 55} "4. THE TRIAL COURT ERRED AS A MATTER OR [sic] LAW WHEN IT SENTENCED APPELLANT.
 "ISSUE PRESENTED FOR REVIEW[:] {¶ 56} "DOES A TRIAL COURT ERR AS A MATTER OF LAW WHEN PRIOR TO IMPOSING A SENTENCE IT ENGAGES IN FACTUAL FINDING THAT CAN ONLY BE MADE BY A JURY?"
 {¶ 57} The common pleas court sentenced Lucas to three years of community control and stated that a four-year prison sentence would be imposed if community control was revoked in the future.
 {¶ 58} Lucas claims that his sentence — imposed prior to the announcement of State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, on February 27, 2006 — is void in light of Foster.
 {¶ 59} Prior to the announcement of Foster, we have held that where the trial court imposes a sentence of community control and announces a reserved prison sentence to be imposed should community control be later revoked, the immediate appeal of that disposition is premature. This disposition is only appealable if and when the trial court revokes community control and sentences the defendant to prison. State v.Adams (July 16, 2004), Champaign App. No. 2003 CA 15; 2004 Ohio 3784;State v. Dunson (Feb. 17, 2006), Montgomery App. No. 20961,2006 Ohio 775.
 {¶ 60} One of the reasons for concluding that an immediate appeal of this kind of disposition is premature is that the appeal "may be rendered moot if appellant continues to meet the requirements of his community control." Adams, § 28, 29.
 {¶ 61} We see no reason to depart from the position we have taken inAdams and Dunson. If and when Lucas' community control is revoked and the court imposes sentence, it can then do so in accordance withFoster.
 {¶ 62} This assignment of error is overruled as premature.
 {¶ 63} The judgment will be affirmed.
FAIN, J. and GRADY, J., concur.