OPINION
{¶ 1} Defendant-appellant, Gregory K. Daniel, appeals from his conviction for Possession of Crack Cocaine. He contends that the trial court erred by denying his motion for suppression of evidence. Daniel argues that the police did not have a reasonable suspicion of criminal activity sufficient to justify the investigatory stop that *Page 2 
yielded the evidence he sought to suppress.
 {¶ 2} We conclude that the trial court's decision denying the motion to suppress is supported by competent, credible evidence indicating that there was a reasonable, articulable reason for conducting the investigatory stop.
 {¶ 3} The judgment of the trial court is Affirmed.
 I {¶ 4} Daniel was indicted on one count of Possession of Crack Cocaine. He entered a plea of not guilty, following which he filed a motion to suppress the evidence garnered as a result of the investigatory stop. At the hearing on the suppression motion, the following evidence was adduced.
 {¶ 5} On July 13, 2006, Dayton Police Officer Dan Zwiesler was on patrol in his cruiser when he heard a radio dispatch concerning another officer involved in a foot chase of a criminal suspect. According to Zwiesler, the suspect was described as a "black male, approximately five-eight to five-nine * * * wearing a white t-shirt or tank top, blue jeans, and braided hair that went down to his shoulders."
 {¶ 6} Thereafter, Zwiesler drove to the area of the chase. About five minutes after receiving the dispatch, Zwiesler was driving on a street one block south of the start of the foot chase when he observed a black male, wearing jeans and a white t-shirt, walking down the sidewalk. The man had his hair in braids. Zwiesler began driving down the street slightly behind the man who "would go every few steps and then turn his head to see where [Zwiesler] was." Zwiesler stopped his cruiser about twenty feet away from the man, exited his cruiser and told the man that he needed to speak to him.
 {¶ 7} As Zwiesler approached, he informed the man that he matched the *Page 3 
description of a person who was wanted in connection with damaging a vehicle. When Zwiesler asked for identification, the man stated that he "didn't have any on him but that he would be able to provide his social security number." Zwiesler then placed one hand on the man as he escorted him over to the cruiser. As they were walking toward the cruiser, Zwiesler noticed a "clear plastic baggy containing what [he] immediately believed to be crack cocaine" in the man's front left pants pocket. The man, later identified as Daniel, was arrested. It was later determined that Daniel was not the suspect the other officers had chased.
 {¶ 8} Following the hearing, the trial court denied the motion to suppress. Thereafter, Daniel entered a no-contest plea to the charge, a judgment of conviction was entered, and Daniel was sentenced accordingly. From his conviction and sentence, Daniel appeals.
 II {¶ 9} Daniel's sole assignment of error states as follows:
 {¶ 10} "THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO SUPPRESS BECAUSE THE OFFICER DID NOT HAVE REASONABLE SUSPICION OF CRIMINAL ACTIVITY SUFFICIENT TO JUSTIFY AN INVESTIGATIVE STOP."
 {¶ 11} Daniel contends that the trial court should have granted his motion to suppress evidence gained during the investigatory stop because the police did not have a reasonable basis for stopping him. In support, he contends that the description given over the radio did not match his appearance.
 {¶ 12} "The investigative stop exception to the Fourth Amendment allows a police *Page 4 
officer to stop and briefly detain an individual if the officer possesses a reasonable suspicion, based upon specific and articulable facts, that criminal activity `may be afoot.'" State v. Dow, Montgomery App. No. 22055, 2008-Ohio-1867, ¶ 5, citing United States v. Arvizu
(2002), 534 U.S. 266. (Emphasis added.) Courts must examine the totality of the circumstances of each case to determine whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. Id.
 {¶ 13} This totality of the circumstances approach allows police officers to draw upon their own experience when deciding whether the requisite reasonable suspicion is present. Id. at 273-74. For this reason, when a court reviews an officer's reasonable suspicion determination, it must give "due weight" to factual inferences drawn by law enforcement officers. Id. An officer's reliance on a mere "hunch" is insufficient to justify a stop, however, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls short of satisfying a preponderance of the evidence standard. Id. at ¶ 6.
 {¶ 14} Those circumstances must be viewed "through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold", taking into account the officer's experience and training, and how the situation would have been viewed by any other officer on the street. State v. Andrews (1991), 57 Ohio St.3d 86, 87-88.
 {¶ 15} In this case, Daniel contends that the description did not match his appearance. Specifically, he notes that he is about three inches shorter than the man described in the radio dispatch. He further contends that the description given stated that the suspect was wearing a white t-shirt, but that Daniel was wearing a sleeveless t-shirt *Page 5 
or "muscle"shirt.
 {¶ 16} He asserts that more detailed descriptions were placed over the radio prior to his stop, and that these descriptions would have indicated that he was not the suspect. Finally, he contends that he was not visibly perspiring at the time of the stop, as one would presume a person would be had they been on the run.
 {¶ 17} While there is a slight discrepancy between the radio description and Daniel's actual height, we conclude that this is not enough to taint the stop. Zwiesler testified that he had only one description of the suspect. As noted, Zwiesler was searching for a black male, wearing jeans and either a white t-shirt or tank top. Daniel, a black male, was wearing jeans and a white, sleeveless t-shirt. The suspect had braided hair falling to his shoulders, as did Daniel. Furthermore, Daniel was spotted in the immediate area, and within five minutes, of the onset of the chase. Finally, contrary to his claim, Daniel was observed by Zwiesler to be perspiring.
 {¶ 18} Therefore, we conclude that the record supports a finding that Zwiesler stopped Daniel because he matched the description given of the fleeing suspect. We further conclude that this constituted a reasonable, articulable reason for conducting the investigatory stop.
 {¶ 19} We also note that Daniel contends that because the officer placed a hand on him, he was effectively under arrest. We disagree. According to Zwiesler, he merely placed his hand on Daniel as a protective measure in order to keep Daniel in front of him during the encounter. Such a safety precaution does not elevate the encounter to the level of arrest. See Vandalia v. Armstrong (Aug. 28, 1991), Montgomery App. No. 12581, wherein this court recognized that when an officer is entitled to make an *Page 6 
investigatory stop, the officer also may take reasonable steps to provide for his own safety. The forcible restraint of a suspect does not necessarily convert a detention into a formal arrest. State v.Dunson, Montgomery App. No. 20961, 2006-Ohio-775, ¶ 17. This is particularly true where the purpose of the restraint is for the officer's safety. Id.
 {¶ 20} Daniel's sole assignment of error is overruled.
 III {¶ 21} Daniel's sole assignment of error being overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., and DONOVAN, J., concur.
Copies mailed to:
Mathias H. Heck, Jr.
Michele D. Phipps
William D. Rohrkaste
 Hon. Timothy N. O'Connell *Page 1