OPINION
{¶ 1} Defendant-appellant Albert G. Williams appeals from his conviction on one count of Possession of Crack Cocaine in an amount greater than ten grams, but less than twenty-five grams. Williams contends that the trial court erred by denying his motion to suppress evidence garnered during a police stop and pat-down. In support, *Page 2 
he claims that the police did not have a reasonable and articulable suspicion justifying their decision to conduct a stop, and that the police did not have probable cause to place him under arrest.
 {¶ 2} We conclude that when four police officers immediately handcuffed Williams, who did not appear to represent an imminent threat to their safety, and read him his rights under Miranda v. Arizona
(1966), 384 U.S. 436, this constituted an arrest, not a mere brief, investigative detention, because handcuffing Williams was not reasonably necessary as part of a brief, investigative detention. This arrest was not supported by probable cause, thereby rendering the subsequent pat-down search unlawful. Therefore, the trial court should have sustained the motion to suppress the evidence obtained following the arrest. Accordingly the judgment of the trial court is Reversed and this cause is Remanded for further proceedings.
 I {¶ 3} In early July, 2007, Dayton Police Detectives Raymond St. Clair and Keith Coberly were investigating reports of drug activity in the downtown area of Dayton. The detectives observed Williams and a "known crack addict" interacting. Determining that a drug transaction was taking place, the detectives called in uniformed officers to initiate a stop of Williams. The crack addict was allowed to leave the area. Immediately thereafter, a police cruiser pulled up beside Williams and two uniformed officers exited the vehicle. They initiated a stop and immediately placed Williams in handcuffs and informed him of his rights under Miranda v. Arizona, supra. Thereafter, Detective Coberly and Detective Murphy approached and a pat-down was conducted. The officers *Page 3 
found a utility knife in Williams's pocket. At that point, the Officers decided to place Williams under arrest for Carrying a Concealed Weapon. Williams was transported to jail, where a second search was conducted. That search revealed cocaine.
 {¶ 4} Williams was indicted on one count of Possession of Crack Cocaine, in violation of R.C. 2925.11(A)(C)(4)(d). Prior to trial, Williams filed a motion to suppress on the basis that the police did not have a reasonable articulable reason for stopping him, and that they did not have probable cause to arrest him.
 {¶ 5} At the hearing on the suppression issue, Detective Coberly testified that he did not observe a drug transaction. However, Detective St. Clair testified, in a conclusory manner, that he believed he had seen a drug transaction.
 {¶ 6} Following the hearing, the trial court found that the detectives had a reasonable, articulable suspicion justifying the stop. The trial court further found that the officers were permitted to handcuff Williams in order to maintain their safety, and that this did not result in the encounter having become an arrest, rather than a brief, investigative detention. Furthermore, the trial court found that after finding the knife, the officers had probable cause to arrest Williams, thereby rendering the subsequent search for drugs valid. The trial court overruled the motion to suppress.
 {¶ 7} The matter proceeded to trial, following which a jury convicted Williams as charged. From his conviction and sentence, Williams appeals.
 II {¶ 8} Williams's sole assignment of error is as follows:
 {¶ 9} "THE TRIAL JUDGE ERRED WHEN HE OVERRULED MR. WILLIAMS' *Page 4 
MOTION TO SUPPRESS."
 {¶ 10} In arguing that the trial court should have sustained his motion for suppression of evidence, Williams contends that the police did not have a basis for stopping him and that by handcuffing him, they converted the stop into an arrest, without probable cause to support the arrest.
 {¶ 11} In ruling on motions to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." State v. Retherford (1994), 93 Ohio App.3d 586, 592. Accordingly, when this court reviews suppression decisions, "we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." Id.
 {¶ 12} Warrantless searches and seizures "are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." Katz v. United States
(1967), 389 U.S. 347, 357. One such exception was established inTerry v. Ohio (1968), 392 U.S. 1, 88 S.Ct., wherein the United States Supreme Court held that under some circumstances police officers may approach an individual in order to investigate possible criminal behavior even though there is not probable cause to arrest. In justifying a Terry stop, the officer "must be able to point to specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant that intrusion." Id. at 21.
 {¶ 13} Terry further held that "[w]hen an officer is justified in believing that the *Page 5 
individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," the officer may conduct a patdown search to determine whether the person is in fact carrying a weapon. Id. at 24. Such a protective search will be permitted without a warrant and on the basis of reasonable suspicion rather than probable cause; however, the search must be "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." Terry, supra, at 26.
 {¶ 14} This court has "recognized that when an officer is entitled to make an investigatory stop, the officer also may take reasonable steps to provide for his own safety." State v. Carter, Montgomery App. No. 21999, 2008-Ohio-2588. We have noted that the use of forcible restraint, e.g. handcuffing a suspect, "does not necessarily convert aTerry detention into a formal arrest." Id. However, we also acknowledge that placing a person in handcuffs is more drastic than merely stopping and questioning that person. Therefore, our case law interpretingTerry cannot be read as permitting the police to stop and handcuff every person they may reasonably suspect of criminal activity.
 {¶ 15} The circumstances must warrant the use of handcuffs. "* * * The question is whether, under the circumstances, the officer's use of force was reasonably necessary to ensure his safety and whether the use of force was limited in scope and duration." Carter, quoting State v.Dunson, Montgomery App. No. 20961, 2006-Ohio-775. "When judging the reasonableness of the officer's actions, courts must focus on the totality of the circumstances from an objective standpoint. Furthermore, `these circumstances are to be viewed through the eyes of the reasonable and prudent police officer on the scene *Page 6 
who must react to events as they unfold.'" State v. Molette, Montgomery App. No. 19694, 2003-Ohio-5965, citations omitted.
 {¶ 16} The State cites our holding in Carter, supra, in arguing that the officers were justified in handcuffing Williams due to safety concerns. Specifically, the State claims that the use of handcuffs was reasonably necessary because the stop took place at "11:30 at night, in an area frequented by drugs and crimes * * * and [because] there were additional individuals in the immediate area."
 {¶ 17} However, we note that Carter involved a situation in which there was initially one officer confronting four other individuals regarding suspected drug activity. Id. at ¶ 6. Furthermore, the investigating officer believed that movements made by the defendant, Carter, indicated that the defendant was trying to reach for a weapon. Id. at ¶ 22. Thereafter, another officer arrived on the scene, and Carter was handcuffed because he was not "compliant with orders to show his hands and to exit the vehicle." Id. at ¶ 23. This court, in determining that the officers acted reasonably in restraining the defendant, stated:
 {¶ 18} "[The officers] had a reasonable basis to fear that Carter might be armed. Carter was suspected of committing a drug offense, a crime that frequently involves armed participants. [The officers] also had observed Carter make a move toward his waist area, and [they] had found Carter to be less than compliant." Id. at ¶ 25.
 {¶ 19} The facts in this case are distinguishable from those inCarter. Here, there were at least four officers present at the point Williams was stopped. There is no indication in the record that any other individuals were near the officers at the time. In fact, the record indicates that even the "known crack addict" had left the area. Further, *Page 7 
the record indicates that Williams did not make any threatening gestures and did not appear to be armed or attempting to arm himself. Also, there is no indication that Williams had failed to comply with the officers' requests.
 {¶ 20} We conclude, based upon these facts, that the officers' use of restraints was not reasonably necessary as part of a brief, investigative stop, and that officers therefore converted theTerry stop into an arrest by handcuffing Williams.
 {¶ 21} At the time of the stop, the officers arguably had an articulable suspicion justifying the stop. However, the officers did not claim, nor can we conclude, that there was probable cause to justify an arrest. Therefore, we conclude that the trial court erred by overruling Williams's motion to suppress.
 {¶ 22} Williams's sole assignment of error is sustained.
 III {¶ 23} Williams's sole assignment of error having been sustained, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
WOLFF, P.J., and DONOVAN, J., concur.
Copies mailed to:
Mathias H. Heck, Jr.
Kelly D. Crammer
Robert Alan Brenner
Hon. Jeffrey E. Froelich *Page 1