The STATE of Ohio, Appellee,

v.

NAGEL, Appellant.

[Cite as *State v. Nagel*, 188 Ohio App.3d 348, 2010-Ohio-3062.]

Court of Appeals of Ohio,
Sixth District, Williams County.

No. WM–09–018.

Decided June 30, 2010.

350

Thomas A. Thompson, Williams County Prosecuting Attorney, for appellee.

Paul H. Duggan, for appellant.

PIETRYKOWSKI, Judge.

{¶ 1} Defendant-appellant, Martin Todd Nagel, appeals the judgment of the, October 26, 2009 Williams County Court of Common Pleas, which, following a jury trial convicting him of rape and multiple counts of sexual battery, sentenced appellant to life imprisonment. For the reasons that follow, we affirm the trial court's judgment.

{¶ 2} On January 29, 2009, appellant was indicted on multiple counts of rape, gross sexual imposition, and sexual battery. The charges were alleged to have occurred from 2001 to 2008 and involved appellant's live-in girlfriend's daughter, "A.W.,[1]" who was 11 years old when the alleged incidents began. In 2008, the victim gave birth to appellant's child. On February 4, 2009, appellant entered a not-guilty plea to all the counts in the indictment.

{¶ 3} On June 2, 2009, appellant filed a motion in limine to exclude all evidence relating to the DNA sample provided by appellant. Appellant argued that because the DNA results were not relevant to Counts I through VIII, reference

---

1. Appellant and the girlfriend wedded during the pendency of the charges.

to the test results would be prejudicial. Alternatively, appellant filed a motion to separate the trial on Counts I through VIII from Counts IX and X. On June 29, 2009, the trial court denied both motions.

{¶ 4} On June 30, 2009, appellant filed a motion in limine to exclude all evidence relating to appellant's April 1, 2009 polygraph examination. Appellant argued that although the polygraph was stipulated to, his former counsel improperly agreed to "multifaceted, confusing and misleading questions." The state opposed the motion, asserting the clear language of the stipulation and arguing that the questions were not confusing and were reviewed and agreed upon prior to testing. The Polygraph Agreement and Stipulation provided:

{¶ 5} "5. The above-named polygraph examiner shall be permitted if called as a witness by the State of Ohio or by the defendant to testify at any criminal trial * * * as an 'expert' regarding all aspects of the test administered, and such testimony shall be offered and received as evidence in the trial without objections of any kind by any party to this Agreement except as to the weight of evidence it is to be given * * *."

{¶ 6} The polygraph test questions provided:

{¶ 7} "1. While living in the trailer on County Road E, did you permit or allow [A.W.] to fondle your penis with her hand?

{¶ 8} "2. While living in the trailer on County Road E, did you put your penis in [A.W.]'s mouth or vagina?

{¶ 9} "3. While living in the house on County Road 9, did you knowingly or intentionally have sex with [A.W.]?

{¶ 10} "4. While living in the house on County Road A, did you knowingly or intentionally have sex with [A.W.]?"

{¶ 11} On July 22, 2009, the court denied the motion.

{¶ 12} On September 25, 2009, four days before the commencement of the trial, appellant filed a motion requesting funds for a private investigator, a motion to exclude references to the accuser as "victim," and a motion for emergency funds for fees and to hire expert witnesses. Appellant also filed motions to appear at trial in civilian clothing and without restraints. Further, appellant filed a motion requesting a hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469, arguing that the methodology used in the polygraph examination was unreliable and led to "misleading and unreliable results."

{¶ 13} The trial court denied appellant's motions for funds for a private investigator, to refrain from referring to the accuser as "victim," and for funds to hire an expert witness. The court granted appellant's motions to appear in

civilian clothing and without restraints. The *Daubert* hearing was held, out of the hearing of the jury, on the second day of trial prior to polygraph examiner Larry Silcox's testimony.

{¶ 14} On September 29, 2009, the trial commenced. A summary of the evidence presented is as follows. Williams County Sheriff's Deputy Monica Herman testified that on October 22, 2008, she received a call from the Edgerton Police Department about an alleged rape/molestation case that reportedly occurred outside the Edgerton city limits. Deputy Herman stated that three females had delivered a letter that the victim, A.W., had written to her ex-boyfriend explaining that she had been molested from the age of 11. Herman briefly spoke with A.W.; A.W. was "edgy" and just wanted to get her son and leave the area for the night. Deputy Herman went to A.W.'s mother's and appellant's house to pick up the child; according to Herman, appellant stated, "[T]hanks for ruining my place to live" and that he was "tired of being accused." Herman acknowledged that when she spoke with A.W., she could remember only three specific instances of abuse.

{¶ 15} Williams County Sheriff's Deputy Shaun Fulk testified that he spoke with appellant about the allegations. Appellant denied having a sexual relationship with A.W.

{¶ 16} Polygraph examiner Larry Silcox testified that he had conducted appellant's April 1, 2009 polygraph examination. Silcox explained that the pretest interview includes a careful review of the test questions. Silcox stated that appellant was asked four questions relating to various locations and sexual activities allegedly involving the victim. According to Silcox, appellant's answers were deceptive as to three of the four questions. After reviewing the test results, appellant continued to deny engaging in sexual contact with A.W.

{¶ 17} During cross-examination, Silcox was extensively questioned about the form of the questions. Specifically, Silcox was asked about the compound nature of the questions and the fact that a polygraph examination requires a "yes" or "no" answer, not a narrative answer. Silcox was also questioned about an article from the American Polygraph Association that criticized the use of compound questions during a polygraph examination. However, Silcox stressed that he reviewed the questions "in detail" with appellant prior to the testing to make certain that he understood them.

{¶ 18} The parties entered into a stipulation regarding the chain of custody— i.e., the collection, storage, and delivery, of the evidence obtained for DNA analysis. Julie Cox, a forensic scientist at the Ohio Bureau of Criminal Identification and Investigation, testified that she performed DNA tests on saliva swabs taken from appellant, appellant's son, A.W., and A.W.'s child. Cox stated that her findings were that appellant could not be excluded as the father of A.W.'s

child. Statistically, the probability that appellant is the child's father is 99.9999 per cent.

{¶ 19} A.W. testified that appellant moved in with her mother, sister, and brother when she was six months old. When A.W. was four years old, appellant's son moved in with them. A.W. explained that she called appellant "Dad" and that he was in charge of the rulemaking and discipline of the children in the household. A.W. testified regarding the dates and locations of the incidents. Typically, she could remember dates only in relation to where they lived at the time. A.W. testified that the incidents began when she was ten years old and that they consisted of her placing her hand on appellant's penis, placing her mouth on appellant's penis, and sexual intercourse. Appellant also put his mouth on her vagina; A.W. stated that this occurred approximately five times.

{¶ 20} A.W. testified that during the years that she shared a bedroom with her sister, approximately one to two times per month, appellant would come into her bedroom and take her to the living room or his bedroom. They would then engage in the above-mentioned sexual activity.

{¶ 21} A.W. testified that in 2006, she had her own bedroom, and the incidents increased to three to four times per week. A.W. testified that from fall 2007 through spring 2008, the incidents had decreased because she was pregnant. She stated that appellant had intercourse with her the night before her labor was to be induced.

{¶ 22} During cross-examination, A.W. admitted that during the years of the alleged abuse, she never had any medical issues or reports from school that she had been sleepy or lethargic during the day. A.W. also acknowledged that she could only remember a few specific instances of abuse; she later testified that she "blocked most of it out."

{¶ 23} A.W. was also questioned regarding a possible motive to fabricate the allegations. Appellant and A.W.'s mother wanted her to break up with a boyfriend with whom she was having a sexual relationship.

{¶ 24} Appellant testified that he did not rape or molest A.W. Appellant stated that the only sexual contact he had with A.W. was when her son was conceived. According to appellant, he was asleep on the couch and woke up being "stimulated" by A.W. Appellant admitted to having intercourse with A.W. and stated that he was "very wrong in not stopping."

{¶ 25} Regarding the polygraph examination, appellant stated that the questions were confusing and that he was not sure whether they were directed at where he was living or whether he had done certain sexual acts.

{¶ 26} During cross-examination, appellant agreed that his girlfriend's children looked to him as a father figure. Appellant admitted that he never discussed

with either the police or the polygraph examiner the fact that he had had a consensual sexual contact with A.W. Appellant explained that he was being accused of rape and molestation and vehemently denied those charges.

{¶ 27} Appellant's wife and his son testified that they were never aware of any suspicious activity between appellant and A.W. Appellant's son testified that from age 12 through high school, he was consistently up around 3:00 a.m. to get something to eat. Appellant's son did acknowledge that he was with his mother every other weekend and half the summer.

{¶ 28} Following the trial, the jury found appellant guilty of six of the ten counts in the indictment. Appellant was acquitted of two counts of rape and two counts of gross sexual imposition. Appellant was convicted of one count of rape and five counts of sexual battery.

{¶ 29} On October 26, 2009, appellant was sentenced to life imprisonment for rape and five years of imprisonment for each count of sexual battery. The sentences were ordered to be served consecutively. Appellant was also designated a Tier III sex offender. This appeal followed.

{¶ 30} Appellant now raises the following four assignments of error for our consideration:

{¶ 31} "I. Trial counsel for defendant/appellant provided ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I, of the Ohio Constitution.

{¶ 32} "II. The trial court erred in denying the request of defendant/appellant for a polygraph expert and emergency funds.

{¶ 33} "III. The trial court erred by allowing the expert testimony of the polygraph operator for the State of Ohio following the *Daubert* hearing.

{¶ 34} "IV. The trial court erred by manifesting a bias in favor of the State of Ohio and against defendant/appellant."

{¶ 35} In appellant's first assignment of error, he argues that his trial counsel was ineffective by filing untimely pretrial motions, by failing to request that a juror be removed for cause, by stipulating to the admission of the DNA evidence, by failing to object when the victim testified that appellant "whipped" her with a belt and "smashed" encyclopedias in her face, and by failing to object to testimony and evidence regarding the polygraph examination.

{¶ 36} At the outset, we note that the standard for determining whether a trial attorney was ineffective requires appellant to show (1) that the trial attorney made errors so egregious that the trial attorney was not functioning as the "counsel" guaranteed appellant under the Sixth Amendment and (2) that the deficient performance prejudiced appellant's defense. *Strickland v. Washington*

(1984), 466 U.S. 668, 686–687, 104 S.Ct. 2052, 80 L.Ed.2d 674. In essence, appellant must show that his trial, due to his attorney's ineffectiveness, was so demonstrably unfair that there is a reasonable probability that the result would have been different absent his attorney's deficient performance. Id. at 693, 104 S.Ct. 2052.

{¶ 37} Furthermore, a court must be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" in reviewing a claim of ineffective assistance of counsel. Id. at 689, 104 S.Ct. 2052. A properly licensed attorney in Ohio is presumed to execute his duties in an ethical and competent manner. *State v. Hamblin* (1988), 37 Ohio St.3d 153, 155–156, 524 N.E.2d 476. Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel. *State v. Phillips* (1995), 74 Ohio St.3d 72, 85, 656 N.E.2d 643. Even if the wisdom of an approach is debatable, "debatable trial tactics" do not constitute ineffective assistance of counsel. *State v. Clayton* (1980), 62 Ohio St.2d 45, 48–49, 16 O.O.3d 35, 402 N.E.2d 1189. Finally, reviewing courts must not use hindsight to second-guess trial strategy and must keep in mind that different trial counsel will often defend the same case in different manners. *Strickland,* supra at 689, 104 S.Ct. 2052; *State v. Keenan* (1998), 81 Ohio St.3d 133, 152, 689 N.E.2d 929.

{¶ 38} Appellant first argues that trial counsel was ineffective by failing to file timely pretrial motions. In support, appellant cites *State v. Yates,* 166 Ohio App.3d 19, 2006-Ohio-1424, 848 N.E.2d 917, where the court found that trial counsel had been ineffective in failing to timely file a motion to suppress. In *Yates,* the motion to suppress was orally made on the date of trial. It is undisputed that the information needed to file the motion was available months prior to trial. Id. at ¶ 7. The court specifically found that had the motion been timely filed, it would have been granted. Id. at ¶ 10.

{¶ 39} Appellant contends that as in *Yates,* trial counsel had 154 days from his entry of appearance until the start of the trial to file motions for an investigator and for emergency funds to hire a polygraph expert. Appellant asserts that this delay cannot be considered sound trial strategy. Although we agree that the motions were tardy, we cannot say that the delayed filing prejudiced appellant's defense.

{¶ 40} First, appellant's stated reason for requesting an investigator was to "look into the circumstances surrounding the charged offenses." In order to obtain an expert witness at state expense, a defendant must demonstrate more than a mere possibility that an expert will provide assistance. *State v. Evans,* 153 Ohio App.3d 226, 2003-Ohio-3475, 792 N.E.2d 757, ¶ 14, citing *State v.*

*Campbell* (2000), 90 Ohio St.3d 320, 328, 738 N.E.2d 1178. "At a minimum, the indigent defendant must present the trial judge with sufficient facts which will demonstrate a particularized need for the expert requested." *Evans* at ¶ 14. Appellant clearly failed to demonstrate a particularized need for an investigator.

{¶ 41} In addition, appellant failed to demonstrate this need with regard to a polygraph expert, as discussed later. Further, appellant's request for a medical and a behavioral expert were not supported by a showing of a particularized need.

{¶ 42} Appellant next asserts that trial counsel was ineffective by failing to request that a potential juror be excused for cause. Crim.R. 24 provides that a juror may be excused for cause where, among other things, the juror "is possessed of a state of mind evincing enmity or bias toward the defendant." However, no juror will be dismissed "if the court is satisfied, from the examination of the juror or from other evidence, that the juror will render an impartial verdict."

{¶ 43} In the present case, a potential juror, S.E., indicated that her daughter had been molested by her stepbrother. S.E. stated that she did not know about the abuse for several years; S.E. stated that wished that she had known so she "could have protected her daughter." S.E. did state that she has no anger toward the stepson, that he went through counseling, and that he is now a very successful individual. S.E. further stated that she would not be "overly harsh" in judging appellant and that she would be able to follow the law and the judge's instructions.

{¶ 44} Upon review, we find that appellant's trial counsel could have reasonably presumed that S.E. would not have been excused for cause. Counsel then used a preemptory challenge to excuse her. Appellant has further failed to demonstrate how using a peremptory challenge to dismiss S.E. prejudiced him.

{¶ 45} Appellant next contends that trial counsel was ineffective by agreeing to stipulate to the admission of the DNA evidence without requiring the state to prove the chain of custody. We agree with the state's contention that such a stipulation could have reasonably been tactical in nature. The DNA evidence was a key piece of evidence, one that appellant tried to bar from the trial by filing a motion in limine. It is likely that trial counsel did not wish to belabor or prolong the testimony regarding the DNA test and its results.

{¶ 46} Next, appellant argues that trial counsel was ineffective by failing to object to A.W.'s testimony that on two occasions, appellant whipped her with a belt, and on one occasion, he "smashed" encyclopedias in her face. Appellant contends that the testimony was "highly prejudicial" and not relevant to the charges. We disagree. As the state correctly notes, the sexual-battery counts

required the state to prove that appellant was a person "in loco parentis" with A.W. Thus, appellant was questioned regarding whether she referred to appellant as "dad" and what his role was in running the household, including with respect to discipline. Further, as to the rape counts, the state was required to prove that appellant forced A.W. to submit to sexual conduct by force or threat of force. Thus, appellant's method of discipline was relevant to A.W.'s perception of the alleged events.

{¶ 47} Finally, appellant lists multiple additional instances of alleged ineffective assistance of counsel, including failing to object to "opinion" testimony of the polygraph expert, failing to object to the admission of the polygraph charts that counsel had not received prior to trial, failing to object to the report prepared after the polygraph examination, and failing to object when the DNA stipulation was read into the record.

{¶ 48} Regarding the polygraph expert, as set forth above, the stipulation clearly provided for the admission of his testimony. Further, a *Daubert* hearing was held prior to Silcox's testimony. The polygraph charts and report were also a part of the stipulation. Lastly, the DNA stipulation had been signed by the parties and discussed in detail. Counsel was not ineffective for failing to object to the above evidence.

{¶ 49} Based on the foregoing, we find that even assuming trial counsel made any errors, the errors did not prejudice appellant. Counsel clearly represented appellant as vigorously as possible. In fact, appellant was acquitted of four of the ten counts in the indictment. Appellant's first assignment of error is not well taken.

{¶ 50} In appellant's second assignment of error, he argues that the trial court erred when it denied appellant's motion for a polygraph expert and emergency funds.

{¶ 51} "[D]ue process, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution, requires that an indigent criminal defendant be provided funds to obtain expert assistance at state expense only where the trial court finds, in the exercise of its sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial." *State v. Mason* (1998), 82 Ohio St.3d 144, 150, 694 N.E.2d 932.

{¶ 52} In his motion, appellant argues that a polygraph expert was necessary in order to dispute the complex nature of the questions. Appellant asserted that an expert was required to "adequately challenge the test and call the test results into question."

{¶ 53} At the conclusion of the *Daubert* hearing, the trial court stated that it would give trial counsel substantial leeway during the cross-examination of Silcox to question him regarding the compound nature of the questions. Counsel was even permitted to introduce and question Silcox regarding a learned treatise. Appellant has not demonstrated that an expert witness would have provided any additional assistance. Further, as stated above, the motion was filed just days before trial.

{¶ 54} Based on the foregoing, we conclude that the trial court did not abuse its discretion when it denied appellant's motion for funds to obtain a polygraph expert. Appellant's second assignment of error is not well taken.

{¶ 55} In appellant's third assignment of error, he contends that the trial court erred by allowing the state to present the expert testimony of the polygraph operator following the *Daubert* hearing. We first note that a trial court's ruling to admit or to exclude evidence will not be reversed on appeal absent an abuse of discretion. *State v. Sage* (1987), 31 Ohio St.3d 173, 182, 31 OBR 375, 510 N.E.2d 343; *State v. Smith*, 6th Dist. No. L–05–1350, 2007-Ohio-5592, ¶ 43. " ' "[A]buse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140, quoting *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

{¶ 56} In *Miller v. Bike Athletic Co.* (1998), 80 Ohio St.3d 607, 687 N.E.2d 735, the Supreme Court of Ohio adopted the *Daubert* analysis, stating:

{¶ 57} "In evaluating the reliability of scientific evidence, several factors are to be considered: (1) whether the theory or technique has been tested, (2) whether it has been subjected to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology has gained general acceptance. Although these factors may aid in determining reliability, the inquiry is flexible. The focus is 'solely on principles and methodology, not on the conclusions that they generate.' " (Citations omitted.) Id. at 611–612, 687 N.E.2d 735, quoting *Daubert*, 509 U.S. at 595, 113 S.Ct. 2786, 125 L.Ed.2d 469.

{¶ 58} First, as quoted above, the parties entered into a stipulation that Silcox was permitted to be called as an expert witness by the state of Ohio. Such a stipulation is expressly provided for in *State v. Souel* (1978), 53 Ohio St.2d 123, 7 O.O.3d 207, 372 N.E.2d 1318.

{¶ 59} During the *Daubert* hearing, state's exhibit No. 14, Silcox's curriculum vitae, was submitted to the court for review. Silcox proceeded to testify regarding the methodology used during a polygraph examination. The court specifically asked Silcox whether his testing procedures followed and implement-

ed "the most current and up-to-date steps and techniques to insure the highest possible accuracy." Silcox responded affirmatively.

{¶ 60} Based on the foregoing, we cannot say that the trial court erred when it permitted Silcox to testify. The reliability of the testing procedure was established. Whether or not the results were accurate was an issue to explore during trial. Appellant's third assignment of error is not well taken.

{¶ 61} Appellant's fourth and final assignment of error asserts that the trial court erroneously demonstrated a bias in favor of the state during trial. Pursuant to Evid.R. 611(A), the trial court has discretion in controlling the flow of the trial, including the "mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Further, during a jury trial, a court must maintain the appearance of impartiality. *Mentor–on–the–Lake v. Giffin* (1995), 105 Ohio App.3d 441, 449, 664 N.E.2d 557.

{¶ 62} Because the trial court has the authority to control the flow of trial, an appellate court will not reverse on issues relating to the court's actions during trial absent an abuse of discretion. Id. at 448, 664 N.E.2d 557. Moreover, the failure to object to such alleged errors waives all but plain error. *State v. Watson*, 3d Dist. No. 14–09–01, 2009-Ohio-6713, 2009 WL 4894663, ¶ 41, citing *State v. Johnson* (1999), 134 Ohio App.3d 586, 590, 731 N.E.2d 1149. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus; *State v. Witcher*, 6th Dist. No. L–06–1039, 2007-Ohio-3960, 2007 WL 2216952, ¶ 32.

{¶ 63} In the present case, appellant objects to several dialogues that took place during trial. We will examine each in turn.

{¶ 64} During voir dire, the following exchanges occurred:

{¶ 65} "[Mr. Maassel:] Dr. Brown, what would happen if somebody accused you of a crime? How would you react to something like that? Something that in your mind know that—

{¶ 66} "Mr. Brown: If I did the crime I would plead guilty.

{¶ 67} "Mr. Maassel: But in your mind if you know that things, that you were innocent and if the facts alleged were just terrible—and I don't mean to single you out, sir—

{¶ 68} "The court: Every defendant who appears in this courtroom, regardless of whether they are ultimately innocent or ultimately guilty, have an absolute right to have representation by counsel.

{¶ 69} "And, Mr. Maassel will not be testifying in this case, nor will any of the lawyers be testifying in this case as a witness.

{¶ 70} "Now let's proceed on to the next topic."

{¶ 71} Next, the following exchange occurred:

{¶ 72} "Mr. Conklin: All I needed to discuss was the very last question, did I want my clone up here [in the jury box] if I'm over there [at the defense table]. And it would be no.

{¶ 73} "Mr. Maassel: And why is that?

{¶ 74} "Mr. Conklin: Cause if I'm guilty I wouldn't want to meet me out by the car. If I'm guilty.

{¶ 75} "The court: It was your question Mr. Maassel!"

{¶ 76} Reviewing these two exchanges, we cannot say that the court expressed any improper bias. In the first instance, the trial court was merely stressing that the defendant had the right to counsel, that trial counsel's statement was not testimony, and that counsel did not have the right to testify in the matter. Next, the court was commenting on the potential juror's response to counsel's question posed to all jurors as to whether they would feel comfortable if they were a juror in a trial against him or herself. Admittedly, it was an odd question.

{¶ 77} Next, appellant disputes various comments made by the trial court during the *Daubert* hearing. We first note that the hearing was held outside of the presence of the jury. The court did express that the jury was waiting for the trial to resume for the day and that the court wanted to move the hearing along. This certainly falls within Evid.R. 611. The trial court also indicated that it understood the compound-question issue and that it would give trial counsel substantial leeway during cross-examination of Silcox.

{¶ 78} Appellant cites multiple instances during which the trial court either asked counsel to ask a question or asked counsel whether what was stated was, in fact, a question. Again, from the context of the testimony, it appears that the court was simply attempting to move the questioning along. The court also, on a few occasions, attempted to keep the questions on topic. Appellant also complains about a few instances during which the state objected to testimony, and the objection was sustained. Reviewing the transcript, we note that the trial court also sustained objections made by appellant's trial counsel.

{¶ 79} After careful review of the entire trial transcript, we cannot say that the trial court manifested any particular bias in favor of the state and against appellant. In fact, during appellant's testimony, he was permitted to answer questions in nearly a narrative form. Further, during the state's cross-examination of appellant, the court stated: "I remind the jury, the defendant has a right not to speak and a right to remain silent." Accordingly, we find that appellant's fourth assignment of error is not well taken.

{¶ 80} We therefore find that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Williams County Court of Common Pleas is affirmed.

Judgment affirmed.

OSOWIK, P.J., and SINGER, J., concur.